UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN W. RICHARDSON, III,

        Plaintiff,

    v.

OLD DOMINION UNIVERSITY AND
JEFFREY JONES,

        Defendants.

Case No. 2:23cv354

## ORDER

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), filed by Old Dominion University ("ODU") and Jeffrey Jones ("Mr. Jones" and, together with ODU, the "Defendants"). Mot., ECF No. 14. For the following reasons, Defendant's Motion (ECF No. 14) is **DENIED as to Counts I and IV and GRANTED as to Counts II, III, and V**. Plaintiff's Motion to Amend (*see* ECF No. 18 at 16, n.4) is **GRANTED**.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

When ruling on a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true and draw any reasonable inferences

---

[1] Plaintiff has outlined additional factional allegations that fall outside of Title VII's statutorily authorized time period for reporting violations, which he contends provide "contextual background" to his primary claims. *See* Compl. at ¶¶ 20–28, n.1; *see also* 42 U.S.C. § 2000e-(5)(e)(1); *Agolli v. Office Depot, Inc.*, 548 Fed. App'x 871, 874 (plaintiff was required to file an EEOC charge within 300 days of the unlawful employment

1

in favor of the plaintiff. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). The Court "is not bound with respect to a complaint's legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Accordingly, the Court reviews the facts as alleged by Plaintiff John W. Richardson ("Mr. Richardson" or "Plaintiff") in his Complaint. *See* Compl. at ¶¶ 5–72, ECF No. 1.

Mr. Richardson is an African American man, who was employed as an Assistant Basketball Coach at ODU. *Id.* at ¶¶ 8, 12. Mr. Jones was employed as the Head Basketball Coach at ODU and was Mr. Richardson's boss. *Id.* at ¶ 11. Until his termination, Mr. Richardson had a 27-year career as an Assistant Basketball Coach. *Id.* at ¶ 12. He holds a master's degree in Sports Management from ODU. *Id.* Mr. Richardson was an Assistant Basketball Coach at ODU from 2008 to 2010 and then again from 2012 until his termination on September 1, 2022. *Id.* at ¶¶ 13–14. During his nearly 12 years of employment at ODU, Mr. Richardson was never promoted nor was his position or title changed. *Id.* at ¶ 14. Mr. Richardson was never disciplined by ODU. *Id.*

Defendant Jones was hired as the Head Basketball coach at ODU in April 2013. *Id.* at ¶ 15. While serving as Mr. Jones' Assistant Coach, Mr. Richardson was ODU's top recruiter of student athletes, but he was not given a commensurate title or any promotions. *Id.* Mr. Richardson was relegated to a role in recruiting based on Mr. Jones' belief that Mr. Richardson could recruit black players more effectively,

---

practice). The Court has considered these allegations to the extent permissible but declines to reiterate the allegations here.

because he "spoke their language" and "better related to them." *Id*. Mr. Richardson was not regularly assigned other coaching duties, despite a demonstrated proficiency in other coaching skills such as player development, scouting, game planning and strategy, and in-game coaching. *Id*. at ¶ 16.

Between the years of 2014 and 2022, Mr. Richardson was not given regular formal year-end performance evaluations. *Id*. at ¶ 17. Mr. Jones purposefully avoided discussing those evaluations and took no interest in the professional development of Mr. Richardson. *Id*. When Mr. Richardson received evaluations, they were positive. *Id*. Mr. Richardson was never advised that he had any performance issues, ODU never documented any deficiencies, and Mr. Richardson received regular merit-based salary increases. *Id*. During his time at ODU, Mr. Richardson heard complaints from several former African American players that Mr. Jones treated them poorly, exhibited a lack of respect towards them, and that both Mr. Jones and his white assistants treated them worse than they did white players. *Id*. at ¶ 18.

On or about June 1, 2022, Mr. Jones met with Mr. Richardson to discuss his 2022 annual evaluation, which focused primarily on comments that Mr. Richardson had written himself in his self-evaluation. *Id*. at ¶ 29. At that time they discussed a November 2021 Myrtle Beach trip, which Mr. Jones did not attend due to illness. *Id*. This discussion largely mirrored a similar conversation they had on December 1, 2021. *Id*. In both conversations, they discussed Mr. Richardson's disappointment that Bryant Stith ("Stith") was named Interim Head Coach over Mr. Richardson. *Id*. Mr. Richardson had more experience and had been at the University longer, but Stith

3

was named Interim Head Coach. *Id.* Mr. Richardson noted his disagreement but emphasized that he was committed to working tirelessly for Mr. Jones, Stith, and the basketball team. *Id.* Mr. Jones accused Mr. Richardson of being a distraction on the Myrtle Beach trip. *Id.*

On or about July 1, 2022, Stith resigned to accept an assistant coaching position at UNC Greensboro. *Id.* at ¶ 30. On or around that same date, Mr. Jones assured Mr. Richardson that "he would be taken care of." *Id.* at ¶ 31. Jones intended to induce Mr. Richardson to stay at ODU and continue to recruit young, talented, black players for his team. *Id.* Further, Mr. Jones knew that the window for Mr. Richardson to find a comparable coaching job away from ODU would close for the year as soon as practices began in September. *Id.*

From July 14, 2022 through August 9, 2022, Mr. Richardson was traveling back and forth from Norfolk, Virginia to Mariana, Florida and he was actively recruiting two young black players to play for ODU in the Fall of 2022. *Id.* at ¶ 32. During this same time Mr. Jones was conducting interviews with candidates to fill Stith's spot. *Id.* On or about July 14, 2022, Mr. Jones told one such candidate that he was promoting Mr. Richardson to Associate Head Coach. *Id.* at ¶ 33. Mr. Jones also told multiple other people the same thing. *Id.* In truth, Mr. Jones knew that he was not going to promote Mr. Richardson and instead planned to use Mr. Richardson to finish recruiting a full roster for the coming basketball season. *Id.* He led Mr. Richardson on so that Mr. Richardson would be unable to find a new coaching job. *Id.*

On or about August 22, 2022, Jordan Brooks was named Director of Recruiting for the Men's Basketball program. *Id.* at ¶ 34. On that same day, Mr. Jones falsely advised Mr. Richardson that he was promoting him to Associate Head Coach, but that he wanted Mr. Richardson to handle the off campus recruiting calendar for the Fall recruiting period, which corresponded with a time when two sought-after black recruits would arrive on campus. *Id.* Mr. Jones knew that he was not, in fact, planning to promote Mr. Richardson to Associate Head Coach, and that he would instead terminate his employment when Mr. Richardson was no longer useful. *Id.* at ¶ 35. On August 24, 2022, certain sought-after black recruits that Mr. Richardson had brought into the program arrived on campus to play basketball for ODU. *Id.* at ¶ 36. On August 29, 2022, through August 31, 2022, Mr. Richardson joined Mr. Jones and the rest of the coaching staff at various team activities including a lunch, the ODU team's first preseason practice, a conditioning run, and discussions about a player's shooting technique. *Id.*

Finally, on September 1, 2022, Mr. Richardson was called into Mr. Jones office and was informed that his employment would be terminated. *Id.* at ¶ 37. Bruce Stewart, the Deputy Athletic Director at ODU, was present. *Id.* Mr. Richardson was not given any reason for his termination. *Id.* Mr. Richardson was not promoted to Associate Head Coach or any other title. *Id.* at ¶ 38. He was lied to and ultimately terminated. *Id.* He was subjected to disparate discipline and scrutiny and treated less favorably than other, Caucasian assistant basketball coaches at ODU. *Id.* As a result

5

of the discrimination, Mr. Richardson is suffering lost wages, attorney's fees, and psychological pain, suffering, and trauma. *Id.* at ¶ 39.

### B. Procedural Background

On or about December 14, 2022, Mr. Richardson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Compl. at ¶ 5, ECF No. 1. On April 24, 2023, the EEOC issued a right to sue letter to Mr. Richardson. Exhibit A at 2, ECF No. 1-1. The Plaintiff then filed his lawsuit with this Court on July 19, 2023. Compl., ECF No. 1. On August 30, 2023, Defendants filed the instant Motion and accompanying Memorandum in Support. Mot., ECF No. 14; Mem. Supp., ECF No. 15. The Plaintiff filed his response on October 3, 2023. Resp. Opp., ECF No. 18. Finally, the Defendants filed their Reply on October 10, 2023. Reply, ECF No. 19.

On October 12, 2023, the Defendant's filed their Request for a Hearing. ECF No. 20. The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Civ. R. 7(J). This motion is now ripe for adjudication.

## II. JURISDICTION

This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiffs' claims for race-based discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and for Discrimination in violation of 42 U.S.C.

§ 1983 ("§ 1983").[2] *See* Compl. at I and II, ECF No. 1; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The Court may properly hear Counts III, IV and V—Plaintiffs' state law claims for violations of the Virginia Human Rights Act (the "VHRA"), Fraudulent Inducement, and Breach of Contract—based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact")

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim

---

[2] The Court notes that the Complaint alleges a violation of 18 U.S.C. § 1983. Compl. at 13, ECF No. 1. As Defendants correctly point out, Title 18 of the United States Code does not have a § 1983. Mem. Supp. at 11, ECF No. 15. Plaintiff's Response in Opposition to the Motion correctly identifies the relevant statute as 42 U.S.C. § 1983. Resp. Opp. at 11, ECF No. 18. As such, the Court will accept the submission of the Plaintiff that the omission was due to a typographical error and that Count III was intended to allege violations of 42 U.S.C. § 1983. *Id.* at 2–3, n. 3.

requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556

8

(internal quotation marks omitted) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## IV.     ANALYSIS

### A.     Count I—Title VII Discrimination as to ODU

Plaintiff alleges that ODU discriminated against him in violation of Title VII based on failure to promote, wrongful termination, disparate treatment, and hostile work environment theories. Compl. at ¶ 43, ECF No. 1. Mr. Richardson has successfully pled facts sufficient to support a violation of Title VII based on a disparate treatment theory, so the Motion will be denied. The Court need not consider whether Mr. Richardson will be successful on each individual theory of Title VII discrimination. However, because the Complaint fails scrutiny on at least one other ground (i.e., failure to promote), his Motion to Amend will be granted.

#### i.     *Failure to Promote*

A claim for discriminatory failure to promote under Title VII requires a plaintiff prove that (1) he is a member of a protected class; (2) he applied for the position at issue; (3) he was qualified for the position; and (4) the delay occurred under circumstances giving rise to an inference of unlawful discrimination. *Lyons v. City of Alexandria*, 35 F.4th 285, 289 (4th Cir. 2022). Significantly, a plaintiff seeking to avoid dismissal must plead sufficient facts to raise a plausible inference that Defendants actions were racially motivated. *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 583 (4th Cir. 2015) (affirming dismissal of a claim pursuant to 12(b)(6), where the plaintiff failed to include "adequate factual

9

allegations" to support a claim that she was discriminated against *because* she was African American or female).

Mr. Richardson's complaint alleges that he was a member of a protected class, as he is an African American man. Compl. at ¶ 8, ECF No. 1. He also alleges that he was qualified for other positions beyond his position as Assistant Coach. *Id.* at ¶ 12, 16. However, his claim fails on the second and fourth elements. First, although Mr. Richardson alleges that a promotion was "long-overdue" and that he would be promoted to Associate Head Coach, he never alleges that he applied for such position. *Id.* at ¶¶ 19, 37. Nor does he allege that such promotions were automatic in the typical course of business. Indeed, Mr. Richardson's entire career at ODU was spent as an Assistant Coach with no changes in his title or responsibilities. *Id.* at ¶ 14. Second, Mr. Richardson's complaint indicates that two other men were given promotional opportunities before him—Stith and Jordan Brooks—both of whom are black men. *Id.* at ¶¶ 29, 34. He further never pleads details of the person who received the Associate Head Coach job instead of Mr. Richardson.

Accordingly, the Court finds that Mr. Richardson's complaint does not plead sufficient facts to support a violation of Title VII based on a failure to promote.

    ii.    *Disparate Treatment*

Disparate treatment is proved by showing (1) the plaintiff was a member of the protected class; (2) he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that he was treated differently from

similarly situated employees outside of the protected class. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Taking the facts in the light most favorable to the Plaintiff, Mr. Richardson has successfully pled Title VII discrimination based on disparate treatment at this stage. The Complaint establishes that Mr. Richardson was a member of a protected class, as an African American man. Compl. at ¶ 8, ECF No. 1. It alleges that he was performing his job satisfactorily—specifically detailing a clean disciplinary record, regular merit-based raises, and satisfactory performance reviews. *Id.* at ¶¶ 14, 17, Indeed, Mr. Richardson reports that he was ODU's top recruiter of student athletes. *Id.* at ¶ 15. Mr. Richardson alleges that he was terminated and, that before such termination, he was treated differently than white Assistant Coaches. *Id.* at ¶¶ 12, 18, 37, 43.

The Court finds that Mr. Richardson has pled sufficient facts to survive a 12(b)(6) inquiry as to his claim of disparate treatment. As such the Motion will be **DENIED** as to Count I. However, because the Complaint is deficient with respect to at least one other theory of relief—failure to promote—the Motion to Amend is **GRANTED**.

### B. Count II—VHRA Discrimination as to ODU and Mr. Jones

A Plaintiff claiming violations of the VHRA must exhaust their administrative remedies under Va. Code § 2.2-3907 before filing a lawsuit. *See Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, No. CL2021-3051, 2021 WL 9918463, at *1 (Va. Cir. Ct. Dec. 9, 2021). Virginia law does not recognize the exhaustion of administrative

11

remedies with the EEOC as a precondition to filing a discrimination lawsuit alleging violations of the VHRA. *Id.* In short "[p]roceedings before the EEOC are irrelevant" and "only the presentment of claims and exhaustion of the administrative remedies *before the Virginia Attorney General's Office of Civil Rights* satisfy the prerequisite to filing a discrimination lawsuit" under the the VHRA. *Id.* (emphasis added); *see also Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 449 (E.D. Va. 2022) (plaintiff's claim was procedurally defective where she conflated the Title VII and VHRA administrative precondition requirements and met only those applicable to Title VII while ignoring the VHRA's independent requirement).

The Defendants argue that Mr. Richardson failed to exhaust his administrative remedies with respect to his VHRA claim. The Court agrees. The Complaint alleges only that Mr. Richardson filed a Charge of Discrimination with the EEOC and that he received a Right to Sue letter from the same on April 24, 2023. Compl. at ¶ 5–6, ECF No. 1. That same Right to Sue letter was attached to the Complaint as Exhibit A and advised Mr. Richardson of his right to file a lawsuit "*under federal law* in federal or state court." Exhibit A at 2, ECF No. 1-1. In his Response in Opposition to the Motion, Mr. Richardson "disagrees with Defendants" that his VHRA charge is procedurally defective, but, nonetheless, he elects to withdraw Count II. Resp. Opp. at 1, n.1, ECF No. 18. As such, Count II is **DISMISSED**.

C. <u>**Count III—Discrimination under § 1983 as to ODU and Mr. Jones**</u>

To plead a violation of § 1983, a Plaintiff must show that "some person has deprived him of a federal right" and that "the person who deprived him of that right

12

acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citation omitted). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). A complaint alleging a violation of § 1983 must state a cognizable claim "based upon a *specific and articulable constitutional right.*" *Bell v. Sch. Bd. of City of Norfolk*, 734 F.2d 155, 157 (1984) (citing *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983)).

Defendants challenge the Complaint on the basis that it only alleges vague references to the Equal Protection Clause of the 14th Amendment to the United States' Constitution. Mem. Supp. at 11, ECF No. 15; *see also* Compl. at ¶¶ 52–59. In his Response, Mr. Richardson merely claims that "Plaintiff clearly argues that he has been discriminated on the basis of his race and has been deprived of his rights under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States." Resp. Opp. at 11, ECF No. 18. However, § 1983 claims must enumerate a specific articulable right that was infringed to survive 12(b)(6). *Bland v. Virginia State Univ.*, No. 3:06cv513, 2007 WL 1991041, at *3 (E.D. Va. July 5, 2007) (plaintiff's complaint could conceivably enumerate a claim for deprivation of a property interest, but the court was unable to find that it was supported even under a "liberal and perhaps strained" reading of the Complaint); *Bell v. Sch. Bd. of City of Norfolk*, 734 F.2d 155, 157 (4th Cir. 1984) (plaintiff's alleged violation which involved the "chilling of her first amendment right" was not sufficient to sustain her pleadings).

13

The Defendants also argue that they are entitled to immunity from liability under § 1983. Mem. Supp. at 13–14, ECF No. 15. However, the Supreme Court has "never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action." *Gomez*, 446 U.S. at 640. Rather it is a defense, which is subject to the defendant's burden of pleading. *Id.* (citing Fed. R. Civ. Pro. 8(c)); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "To impose the pleading burden on the plaintiff would ignore [the] elementary fact[s] [of qualified immunity] and be contrary to established practice in analogous areas of the law." *Gomez*, 446 U.S. at 641. Accordingly, the Court declines to evaluate the Complaint through the lens of Defendants' qualified immunity claims, as it is inappropriate at this stage.

Nevertheless, the Court declines to engage in "strained" analysis to dig up the prospective constitutional right that Mr. Richardson alleges was infringed. *See Bell*, 734 F.2d at 157. Mr. Richardson has made a Motion to Amend his pleadings and it is most appropriate for him to describe with particularity which liberty or property interest protected by the Equal Protection Clause is implicated by his pleadings. At this stage, bare references to the protections of the Fourteenth Amendment are not sufficient to sustain Mr. Richardson's § 1983 charge. Accordingly, Count III is **DISMISSED**, and the Motion to Amend is **GRANTED**.

### D. <u>Count IV—Fraudulent Inducement as to ODU</u>

To properly plead fraudulent inducement, a plaintiff must show that the defendant: (1) "made misrepresentations that were positive statements of fact . . .; [2] made for the purpose of procuring the contract; [3] that they are untrue; [4] that they

14

are material; and [5] that the party to whom they were made relied upon them, and was induced . . . to enter the contract." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E. D. Va. 2009) (cleaned up) (citing *Lucas v. Thompson*, 61 Va. Cir. 44, 2003 WL 483831 (Va. Cir. Ct. 2003)). Fraudulent inducement may also be pled where misrepresentations of or concealment of a relevant fact induces the performance of a contract. *Enomoto*, 624 F. Supp. 2d at 452 (citing *Ware v. Scott*, 220 Va. 317 (1979)).

Defendants first seek dismissal of Mr. Richardson's fraudulent inducement claim because he "failed to allege that he entered into any contractual relationship" with ODU. Mem. Supp. at 15, ECF No. 15. In Virginia, at-will employment is the default employment status, and at-will employment may be altered at any time without liability. *County of Giles v. Wines*, 262 Va. 68, 72 (2001). However, the Fourth Circuit has recognized that an at-will employment relationship can establish a contract. *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1019 (4th Cir. 1999) (citing with approval *Fadeyi v. Planned Parenthood Ass'n*, 160 F.3d 1048, 1053 (5th Cir. 1988)); *see also McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

Considering the facts of the complaint in the light most favorable to the Plaintiff, Mr. Richardson has alleged that he was an employee of ODU and that on several occasions Mr. Jones informed Mr. Richardson and others that he intended to "take care of" Mr. Richardson and that he would promote Mr. Richardson to Associate Head Coach. Compl. at ¶¶ 9, 12, 31, 33–34, ECF No. 1. Mr. Richardson alleges that Mr. Jones knew that those representations were false and intended to induce Mr.

15

Richardson to remain employed at ODU. *Id.* at ¶¶ 31, 33–35, 38. Finally, he alleges that he continued to work for ODU and Mr. Jones and did not seek other employment opportunities due to Jones' representation. *Id.* at ¶¶ 31–33, 63–65.

Accordingly, the Court finds that, at this stage, the Complaint sufficiently states a claim for fraudulent inducement. As such, with respect to Count IV, the Motion is **DENIED**.

### E. Count V—Breach of Contract as to ODU

Mr. Richardson alleges breach of contract against ODU. This claim is based upon Mr. Richardson's allegation that ODU denied him leave pursuant to the Family Medical Leave Act ("FMLA") in February of 2023. Compl. at ¶¶ 67–72. In Virginia, breach of contract is proved by showing (1) a legally enforceable obligation to a plaintiff; (2) the defendant's breach of that obligation; and (3) resulting injury to the plaintiff. *Enomoto*, 624 F. Supp. 2d at 449 (citation omitted).

In support of his breach of contract claim, Mr. Richardson claims that ODU kept Mr. Richardson on their payroll as a full-time employee with benefits for six (6) months after his termination on September 1, 2022. Compl. at ¶ 68, ECF No. 1. Mr. Richardson's time on ODU's payroll was scheduled to end on February 28, 2023. *Id.* Accordingly, Mr. Richardson "should have been afforded" all benefits of being a full-time employee at ODU. *Id.* In February 2023, Mr. Richardson suffered from severe anxiety and depression. *Id.* at ¶ 69. He requested leave from ODU pursuant to the FMLA and supported that request with a doctor's certification. *Id.* ODU denied Mr. Richardson's FMLA leave request and informed him that it would not extend the date

16

for Mr. Richardson's removal from the ODU payroll on February 28, 2023. *Id.* at ¶ 70. Finally, the Complaint alleges that ODU's denial of his FMLA leave request constituted both a breach of his agreement with ODU and a violation of the FMLA. *Id.* at ¶ 71.

Mr. Richardson alleges that as a "full time" employee of ODU he was entitled to all benefits that such employees are entitled to. However, he also alleges that he was "terminated" on September 1, 2022, and that he was on ODU's payroll for a period of time. He does not allege that he was entitled to a benefit of FMLA leave nor that he himself was eligible to take FMLA leave based on his contractual relationship with the university in February 2023.

To the extent that Count V is intended to seek relief under the FMLA itself, it is similarly deficient. Mr. Richardson has not alleged sufficient facts to support a claim of FMLA interference or retaliation on the face of his complaint. *See* 29 U.S.C. § 2617; *King v. Blanchard Machinery Co.*, 2012 WL 4586177, at *4 (D. S.C. Sep. 28, 2012) (reciting the elements of an FMLA interference claim); *Gomez v. Haystax Tech., Inc.*, 292 F. Supp 3d 676, 689 (E.D. Va. 2017) (listing the elements of an FMLA retaliation claim).

For the above reasons, the Court finds that Mr. Richardson has not pled essential elements of his Breach of Contract claim, as such, with respect to Count V the Motion is **GRANTED**. However, as amendment would not be futile, Plaintiff's Motion to Amend is also **GRANTED.**

17

### F. Plaintiff's Motion to Amend

The Plaintiff's Response (ECF No. 18) includes a request to amend his complaint, if necessary. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and a motion for the same should be granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962). With regard to motions to dismiss under Rule 12(b)(6) specifically, courts have held that, "[o]rdinarily, where a defect in the complaint is curable, the court should grant the dismissal without prejudice" and with leave to amend. *Ahern v. Omnicare ESC LLC*, No. 5:08cv291, 2009 WL 2591320, at *9 (E.D.N.C. Aug. 19, 2009); *see also, e.g.*, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."). Accordingly, as also noted above, the Plaintiff's motion for leave to amend with respect to Counts I, III, and V is **GRANTED**.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 14) is **DENIED as to Counts I and IV and GRANTED as to Counts II, III, and V.** The Motion to Amend (*see* ECF No. 18 at 16, n.4) is **GRANTED**. Any amended complaint **SHALL** be filed within thirty (30) days of the

entry of this order. The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

      **IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

March 29, 2024
Norfolk, Virginia